IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD MACEY | : | CIVIL ACTION |
| v. | : | |
| ROBERT LAWLER | : | NO. 08-3297 |

**MEMORANDUM RE: PETITIONER'S OBJECTIONS TO THE
<u>MAGISTRATE JUDGE'S REPORT & RECOMMENDATION</u>**

Baylson, J.	July 27, 2010

## I.	INTRODUCTION

Petitioner Edward Macey filed a <u>pro se</u> Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 27, 2008. (Doc. 1). The undersigned referred the case to Magistrate Judge Jacob P. Hart for a Report and Recommendation ("R & R") on the merits. Magistrate Judge Hart filed his R & R on December 30, 2009 (Doc. 22), and presently before the Court are Petitioner's objections.

Upon independent and thorough review, and for the reasons stated below, this Court denies Petitioner's objections and accepts Magistrate Judge Hart's R & R.

## II.	BACKGROUND & PROCEDURAL HISTORY

After a jury trial on December 18, 2003 before the Honorable Jane C. Greenspan of the Philadelphia Court of Common Pleas, Petitioner was found guilty of the murder of Yusef Taylor and related offenses. Petitioner's conviction arose out of a shootout between rival gangs at a playground in Philadelphia on June 25, 1998. According to the Commonwealth, Petitioner, along with fellow gang member Taylor, chased after and shot at members of a rival gang,

1

including Anwar White.  During the chase, petitioner shot Taylor in the shoulder and in the back of the head, and Taylor died.  White, as well as two bystanders—Kimberly Haines and Sharissa Maddox—were also shot but survived.  Petitioner was charged with the murder of Taylor and other offenses as to White, Haines, and Maddox.  At trial, the Commonwealth called Rasheem Campbell, a member of the same gang as Petitioner, and Kreame Clark, the cousin of Taylor, to testify; each had identified Petitioner as the shooter in previous police statements.  When called to testify, however, both Clark and Campbell recanted these statements.  The Commonwealth also had subpoenaed Haines, White, and Maddox to testify, but they failed to appear at trial.

Petitioner was found guilty of first-degree murder as to Taylor, aggravated assault as to Haines and White, and criminal conspiracy and violations of the uniform firearms act.  Petitioner was acquitted of aggravated assault as to Maddox.  On April 22, 2004, Petitioner was sentenced to life imprisonment for the murder of Taylor, concurrent terms of ten to twenty years for conspiracy and aggravated assault, and one to five years for the firearms violation.

Petitioner filed a direct appeal, challenging the sufficiency of the evidence underlying his conviction.  The Superior Court of Pennsylvania issued affirmed the conviction and sentence.  Commonwealth v. Macey, 885 A.2d 578 (Pa. Super. 2005) (table).  The Pennsylvania Supreme Court denied Macey's petition for allowance of appeal nunc pro tunc.

Petitioner then filed a petition for post-conviction collateral relief under the Pennsylvania Post-Conviction Relief Act (PCRA), 42 Pa. C.S. § 9545 et. seq.  Petitioner's appointed counsel for the PCRA petition filed a "no-merit" letter, pursuant to Commonwealth v. Finley, 379 Pa. Super. 390, 500 A.2d 213 (1998), and sought to withdraw from representation.  The PCRA court issued a Notice of Intent to Dismiss the petition without a hearing, pursuant to Pa. R. Crim. P.

907, to which Petitioner submitted a response.  The PCRA court then ordered dismissal of the petition and granted appointed counsel's request to withdraw.  Petitioner appealed to the Superior Court, which affirmed the dismissal of his PCRA petition and subsequently denied his petition for re-argument.  Commonwealth v. Macey, 945 A.2d 764 (Pa. Super. 2006) (table).  Petitioner did not seek allocatur.

On June 27, 2008, Macey filed the instant Petition for Writ of Habeas Corpus, asserting the following grounds for relief: (1) he was denied his Sixth Amendment right to compulsory process because neither the trial court nor his counsel informed him that he had the right to compel Haines and White to testify; (2) trial counsel provided constitutionally ineffective assistance under the Sixth Amendment because counsel (a) neither invoked compulsory process to call Haines or White as witnesses nor informed Petitioner of his right to do so, and (b) failed to properly handle Campbell and Clark as witnesses; (3) he was denied his Fourteenth Amendment right to a full and fair hearing because PCRA counsel failed to properly present his Sixth Amendment claim; (4) the PCRA court's findings are "unreasonable," thus denying Petitioner his Fourteenth Amendment right to a decision supported by record evidence; and (5) the dismissal of Petitioner's timely application for re-argument denied him his First Amendment right of access to the courts.

After reviewing the Petition, Magistrate Judge Hart appointed counsel for Petitioner and scheduled an evidentiary hearing to address Petitioner's claims regarding compulsory process and ineffective assistance as to Haines and White.  A hearing was held on September 22, 2009, at which both Petitioner and his trial counsel, Thomas McGill, testified.  Petitioner and Respondent each submitted supplemental briefing after the hearing.

**III.   SUMMARY OF THE MAGISTRATE JUDGE'S R & R**

Magistrate Judge Hart reviewed Petitioner's claims for federal habeas relief and recommended that they be denied. (Doc. 22). In particular, Magistrate Judge Hart concluded that: (1) Petitioner was not deprived of his Sixth Amendment right to compulsory process because he never invoked it; (2) Petitioner did not show that trial counsel's failure to compel White and Haines to testify and to advise Petitioner of his Sixth Amendment right was unreasonable trial strategy, or that this testimony would have changed the outcome of his trial; (3) Petitioner's claims that the PCRA court failed to support its decision by record evidence, and that he was denied access to the courts, are not cognizable on habeas review because they do not pertain to the underlying conviction; and (4) Petitioner's claim that PCRA counsel was ineffective is specifically excluded from federal habeas relief under 28 U.S.C. § 2554(I).

**IV.   PETITIONER'S OBJECTIONS**

Petitioner's appointed counsel filed objections to the Magistrate Judge's R & R on January 13, 2010. Petitioner filed his own pro se objections to the R & R on January 15, 2010. As to his compulsory-process claim, Petitioner objects that he should not be faulted for failing to invoke this right at trial because he was unaware of it that time, and any waiver of the right must be personal and informed. Petitioner also objects to Magistrate Judge Hart's analysis of his claim that trial counsel provided constitutionally ineffective assistance by failing to compel White and Haines to testify or to advise Petitioner of his right to compel their testimony, and asserts counsel was also ineffective because he failed to conduct a reasonable investigation of Petitioner's case and failed to obtain prison records regarding Clark that would have undermined the veracity of Clark's incriminating police statement. Lastly, Petitioner objects to Magistrate

4

Judge Hart's characterization of his claims relating to the proceedings before the PRCA courts as "irrelevant."

The Commonwealth filed a Response to Petitioner's Objections on March 12, 2010, (Doc. 27), in response to which Petitioner filed a pro se Rebuttal on April 10, 2010. (Doc. 29).

## V. STANDARD OF REVIEW

In ruling on objections to the Report & Recommendation of a United States Magistrate Judge, this court reviews de novo only those findings of the R & R to which a petitioner specifically objects. 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72. When reviewing documents filed pro se a court must keep in mind that "[a] document filed pro se is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.SC. § 2254, which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§2254(d).

In this case, this Court has reviewed the transcript of the evidentiary hearing before Magistrate Judge Hart dated September 22, 2009 and does not reject any of Judge Hart's findings of fact.

## VI. DISCUSSION

### A. Denial of Petitioner's Sixth Amendment Right to Compulsory Process

Petitioner asserts that he was deprived of his Sixth Amendment right to compulsory process because neither the trial court nor his trial counsel informed him of that right, which he would have exercised to compel Haines and White to testify. At the outset, the Court notes, as Magistrate Judge Hart did, that petitioner did not present this claim of denial of compulsory process on direct appeal of his conviction. He mentioned his trial counsel's failure to invoke compulsory process in his filings before the PCRA court. The Superior Court, in addressing his PCRA appeal, construed petitioner's argument as one of ineffective assistance of counsel and found it meritless. Thus, it is questionable whether this claim has been exhausted. The Court agrees with Magistrate Judge Hart, however, that, "even if [the Court] reach[es] the merits of the underlying claim, rather than finding it defaulted, it lacks merit."

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense," and is "a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). This right to compulsory process is rooted in the Sixth Amendment, see Taylor v. Illinois, 484 U.S. 400, 409 (1988), and "protects the presentation of a defendant's case from unwarranted interference by the government, be it in the form of an unnecessary evidentiary rule, a prosecutor's misconduct, or an arbitrary ruling from a trial judge." Government of Virgin Islands v. Mills, 956 F.2d 443, 445 (3d Cir. 1992).

Petitioner contends that he was denied his right to compulsory process because neither the trial court nor his counsel informed him of his right to compel Haines and White to testify. "To state a contention that the [trial court] denied him compulsory process, a criminal defendant must show: (1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purposes." United States v. Cruz-Jiminez, 977 F.2d 95, 100 (3d Cir. 1992).

As Magistrate Judge Hart noted, the Supreme Court has made clear that "[t]he very nature of the right [to compulsory process] requires that its effective use be preceded by deliberate planning and affirmative conduct," and thus "its availability is dependent entirely on the defendant's initiative." Taylor, 484 U.S. at 410. Thus, Magistrate Judge Hart concluded, "the [trial] court could not have erred by failing to invoke the right since it was not initiated by Macey." (Doc. 22 at 8). The Court agrees with this determination.

Petitioner objects that he should not be faulted for failing to invoke the right to compulsory process because he was unaware of it, and any "waiver" of this right must be personal and informed. The Supreme Court has held that the waiver of other Sixth Amendment rights, such as a criminal defendant's right to counsel and right to testify on his own behalf, must be personal and informed.[1] However, as the Supreme Court has stated, the fact that "its availability is dependent entirely on the defendant's initiative" marks "a significant difference

---

[1] In Johnson v. Zerbst, 304 U.S. 458 (1939), the Supreme Court held that the waiver of the Sixth Amendment right to counsel must be intelligent and informed. 304 U.S. at 465. A knowing and intelligent waiver is also required of the defendant with respect to his right to testify. Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973).

7

between the Compulsory Process Clause weapon and other rights that are protected by the Sixth Amendment" Taylor, 484 U.S. at 410. Petitioner does not identify, and the Court is not aware of, any precedent holding that a trial court has a duty to inform a criminal defendant of his right to compulsory process.[2] Even concerning a defendant's right to testify, a Sixth Amendment right whose waiver must be personal and informed, the Third Circuit has declined to place responsibility on the trial court to educate the defendant. See, e.g., United States v. Pennycooke, 65 F. 3d 9, 13 (3d Cir. 1995). The Third Circuit reasoned, "the duty of providing such advice and of ensuring that any waiver is knowing and intelligent rests with defense counsel." Id. Petitioner's objection that the trial court had a duty to inform him of his Sixth Amendment right to compulsory process will accordingly be rejected.

As to trial counsel's responsibility, counsel openly admits that he did not discuss with petitioner his right to compulsory process. (Ev. Hr'g at 9). But the Supreme Court has explained that, "[a]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial," and, "putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . not to put certain witnesses on the stand." Taylor, 484 U.S. at 417–18. In support of his position, petitioner points to the Supreme Court's statement in Taylor that "[t]he decision whether to employ [compulsory process] in a particular case rests solely with the defendant." Id. at 410.

---

[2]However, trial defense counsel McGill testified before Judge Hart that the trial judge (Hon. Jane Greenspan) questioned defendant whether there were any witnesses he wanted to present and were not present, and defendant stated no. (N.T. 9).

8

The Supreme Court made this statement, however, in the context of distinguishing the compulsory process right from "[m]ost other Sixth Amendment rights" which "arise automatically on the initiation of the adversary process" and which require "no action by the defendant . . . to make them active in his or her case." Id. There is nothing in Taylor to suggest, as petitioner argues, that the phrase "solely with the defendant" is intended to exclude defendant's counsel. To the contrary, caselaw is clear that the right to compulsory process can be waived by counsel without the consent of the defendant. See, e.g., Eaton v. United States, 437 F.2d 362, 363 (9th Cir. 1971) (rejecting a habeas petitioner's argument that he was denied the right to compulsory process when not afforded an opportunity to participate in his counsel's decision not to call a witness, "since [this premise] ignores both the purpose of the right and the implied authority of counsel to conduct the defense"); Woodall v. Rowland, 26 F.3d 136, 1994 WL 242158, *1 (9th Cir. 1994) (stating that "the right to compulsory process may be waived by counsel without a client's consent"); Minetos v. Scully, 625 F. Supp. 815, 818 (S.D.N.Y. 1986) (a defendant "is deemed to have waived his right to compulsory process where his counsel fails to move for such process").

Petitioner cannot meet the first prong of the Cruz-Jiminez test because neither the trial court nor counsel deprived him of the opportunity to present witnesses in his favor by failing to educate him of his compulsory process right, or by waiving that right on his behalf. The Court will now turn to petitioner's claim that his counsel's performance at trial—including his failure to compel White and Haines to testify—was constitutionally ineffective.

    **B.**    **Ineffective Assistance of Counsel**

Petitioner's claim for ineffective assistance of counsel is governed by the standard

articulated in Strickland v. Washington, 466 U.S. 668 (1984). "To prevail under Strickland, [Petitioner] must show that his counsel's deficient performance prejudiced him. To establish deficiency, [Petitioner] must show his 'counsel's representation fell below an objective standard of reasonableness.'" Porter v. McCollum, 130 S. Ct. 447, 452 (2009) (quoting Strickland, 466 U.S. at 688). "In light of 'the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant,' the performance inquiry necessarily turns on 'whether counsel's assistance was reasonable considering all the circumstances.' At all points, '[j]udicial scrutiny of counsel's performance must be highly deferential.'" Wong v. Belmontes, 130 S. Ct. 383, 384–85 (2009) (citation omitted) (quoting Strickland, 466 U.S. at 688–89); see Strickland, 466 U.S. at 690 (stating that a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"); United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989) (recognizing that it is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance"). "To establish prejudice, [Petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Porter, 130 S. Ct. at 452 (quoting Strickland, 466 U.S. at 694). "In evaluating that question, it is necessary to consider all the relevant evidence that the jury would have had before it if [Petitioner's counsel] had pursued the different path . . . ." Wong, 130 S. Ct. at 386.

Lastly, as Petitioner's claim is governed by AEDPA's standard of review, Petitioner "is entitled to relief only if the state court's rejection of his claim of ineffective assistance of counsel was 'contrary to, or involved an unreasonable application of' Strickland, or it rested 'on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Porter, 130 S. Ct. at 452 (quoting 28 U.S.C. § 2254(d)).

As noted, in his Petition for habeas relief, petitioner asserts that trial counsel provided constitutionally ineffective assistance in a number of ways; the Court will address these claims in turn.

### 1. Ineffective Assistance as to White and Haines

First, petitioner claims that trial counsel was ineffective because he "failed to invoke petitioner's Sixth Amendment right to compulsory process, or inform him he could compel the attendance and testimony of Kimberly Haines and Anwar White, to tell the jury he did not commit the crime." (Petition 9).

The PCRA courts and Magistrate Judge Hart have addressed this claim thoroughly, and the Court will not rehash their analyses in full here. The Superior Court, in denying petitioner's appeal as to this claim, noted that

> following Commonwealth's case in chief and during the trial court's colloquy on Appellant's right to testify, [petitioner] confirmed that no witnesses existed that counsel had refused to present. In addition, [petitioner] testified that he was satisfied with counsel's representation to that point in the proceedings. Having testified that there were no additional witnesses whom he desired to present and having confirmed his satisfaction with trial counsel's representation in that regard, [petitioner]'s present allegations of ineffectiveness for failing to call Mr. White and Ms. Haines, subpoena them himself, or demand their appearance are meritless.

Super. Ct., p. 7, 12/19/07.

When petitioner renewed this claim in his federal habeas Petition, Magistrate Judge Hart conducted an evidentiary hearing as to it, at which both petitioner and trial counsel testified. Reviewing this testimony, Magistrate Judge Hart concluded that, "in addition to [petitioner's own statements on the record that he did not wish to call any other witnesses and that he was

11

satisfied with counsel, it appears that there were obvious strategic reasons for not calling Haines and White as witnesses and not compelling their testimony after their failure to appear in response to the Commonwealth's subpoena." (Doc. 22 at 16). Additionally, Magistrate Judge Hart observed that "the fact that neither witness appeared in response to the Commonwealth's subpoena indicates that they may not have been cooperative witnesses." As petitioner had not demonstrated deficient performance or prejudice, Magistrate Judge Hart recommended that this claim be denied. The Court agrees with this conclusion, because the record supports Magistrate Judge Hart's findings. <u>See</u> specifically the testimony of trial defense counsel, Thomas McGill.

Petitioner objects that Magistrate Judge Hart fails to properly characterize the testimony that Haines would have been able to offer. Petitioner points in particular to four Investigative Interview reports documenting conversations between Haines and various police officers shortly after the shooting, in which she discussed aspects of the circumstances leading up to the shooting—namely, that an individual named "Rah Rah" told her and her friend to leave the playground, and then began shooting. According to petitioner, these statements would have exonerated him. As Magistrate Judge Hart noted, however, in Haines's signed statement to police, "she stated that she did not see anyone with a gun and she did not know who shot her," thereby undermining any suggestion there may have been in her previous statements that an individual other than petitioner had committed the shootings for which petitioner was convicted. Furthermore, as trial counsel testified and as Magistrate Judge Hart agreed, Haines's testimony "may have only brought attention to the violent nature of the crime" and "would not have been a favorable witness." (Doc. 22 at 11–12). In particular, trial counsel testified that, while Haines had not identified petitioner as the shooter, she "did present as a very sympathetic young woman

12

who at the time was 16 years old, who had been shot in the back, who had an infant with her, and . . . I didn't want to have that kind of prejudicial information in front of the jury, this shootout occurred in a playground where there were a bunch of little children and infants in strollers and their mothers who were young women fleeing for their lives." (Ev. Hr'g at 13-14). Magistrate Judge Hart credited this reasoning, and the Court agrees that trial counsel's decision not to call Haines was within the ambit of reasonable trial strategy under the <u>Strickland</u> standard..

Petitioner likewise objects that testimony from White would have exonerated him, pointing to White's two police statements. Nonetheless, as Magistrate Judge Hart explained, there were numerous reasons for counsel not to seek to call White as a witness. Counsel testified that "he was very concerned as what [White's] testimony would have been had he testified" considering White "was from the rival gang" and "he was the person being shot at and who in fact was seriously wounded. He was shot in the groin, in the penis, and was walking with a walker when he was interviewed by police." And, while White's statements did not identify petitioner by name, they also were not consistent with one another, thus calling into question the reliability of White's memory. Magistrate Judge Hart found this explanation credible, and the Court sees no reason to depart from that assessment.

Petitioner criticizes counsel's explanation of his strategy as to Haines and White as a "hindsight rationalization," and suggests counsel failed to adequately investigate these witnesses.[3] This suggestion, however, is unsubstantiated; counsel testified that he did conduct a

---

[3] Petitioner also asserts in his objections that trial counsel failed, in general, to interview witnesses and conduct a reasonable investigation of his case. Petitioner did not, however, raise this claim as a ground for relief in his Petition. Furthermore, as noted above, the Court is aware of nothing in the record to indicate that counsel failed to perform a constitutionally satisfactory investigation into Petitioner's case, and when petitioner challenged counsel's general failure to interview witnesses before the PCRA court, the court rejected it as a "boilerplate allegation bereft

standard investigation of witnesses in petitioner's case and discussed with Petitioner whether there were any witnesses they wished to call, and the Court is not aware of any evidence in the record indicating that this is untrue or that counsel's explanation of his strategy should not be credited.

Lastly, petitioner objects that counsel's decision not to call Haines and White was "a repudiation of [his] express wishes," as "[p]etitioner believed that Mr. White's and Ms. Haines' testimony would exonerate him, and expressed this belief to his attorney." As noted by the Superior Court, however, petitioner made no indication to this effect when asked by the trial court whether there were any witnesses he wished to call that counsel was refusing to present and whether he was satisfied with counsel's performance to that point. Furthermore, counsel's testimony is to the contrary, instead indicating that petitioner did not tell counsel that he wished to call Haines and White, and "[t]he first time [counsel] heard that Mr. White was going to give some favorable testimony was . . . about a month [before the evidentiary hearing.]" Lastly, even if petitioner had expressed this desire to counsel before trial, the decision of what witnesses to call is, as explained above, entrusted to the discretion of counsel; an otherwise reasonable decision by counsel not to call a witness is not made constitutionally infirm simply because it may conflict with his client's wishes. See, e.g., Diggs v. Owens, 833 F.2d 439, 445–46 (3d Cir. 1987).

For the reasons discussed above, and as outlined by Magistrate Judge Hart, trial counsel's decision not to call Haines and White was reasonable under the Strickland standard, and petitioner has not demonstrated that, had these witnesses been called, the result of his case would

---

of any specifics." (Opinion by Judge Greenspan, p. 2, 11/14/06).

have been different.  Accordingly, petitioner has not made a showing of constitutionally ineffective assistance as to this claim such that federal habeas relief may be granted.

### 2.     Ineffective Assistance as to Clark and Campbell

Petitioner asserts that counsel was ineffective in his handling of certain pretrial statements made by Clark and Campbell.  As petitioner explains, in a statement made prior to trial, "Clark testified petitioner confessed he shot the deceased by accident a few days after the shooting. . . . Clark was in prison for at least a month after the shooting.  Trial counsel failed to document this fact with prison records, move pre-trial to suppress the statement as hearsay[,] and during cross examination failed to effectively impeach [Clark] with the record proving he was in prison at the very time he said petitioner confessed to him." (Petition Memo in Support 1–2)   Petitioner also claims counsel should have objected to, and sought to suppress, statements from Campbell's signed police statement.

The Court finds these claims are without merit.  As to the prison records, the Court fails to see what harm inured as a result of this purported failure; as the Superior Court observed in rejecting this claim, counsel asked Clark on cross-examination whether he was in a juvenile facility the day he alleges that he conversed with Petitioner, and Clark affirmed that, being in a juvenile facility,  he could not have conversed with Petitioner at that time.  (Trial Tr. vol. 1, 78-79, Dec. 16, 2003; Superior Ct, pp. 10–11, 12/19/07).  As to counsel's failure to object on hearsay grounds to certain pre-trial statements made by Clark and Campbell, the Superior Court addressed this claim as well, concluding the statements were admissible under Pennsylvania evidentiary rules.  (Id. at 8-10).  The Court sees no basis for deviating from this conclusion, and thus finds no ground for federal habeas relief as to this claim.  See Priester v. Vaughn, 382 F.3d

394, 402 (3d Cir. 2004) ("Federal court reviewing habeas claims cannot reexamine state court determinations of state-law questions."); United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) (counsel cannot be found ineffective for failing to raise a meritless claim)

### C. PCRA-Related Claims

Lastly, petitioner objects to Magistrate Judge Hart's treatment of his PCRA-related claims. According to petitioner, Magistrate Judge Hart erred in concluding that "the facts in support of the state PCRA court denying petitioner a full and fair opportunity to litigate his federal constitutional claims . . . are irrelevant to a determination of the issues sub judice." (Obj. at 1). For the reasons set forth by Magistrate Judge Hart, petitioner's claims relating to the proceedings in the PCRA courts are not cognizable on federal habeas review; petitioner does not appear to object to this conclusion, however. Instead, petitioner asserts that "to the extent PCRA violations are raised, [it] is to demonstrate [he] was denied a full and fair opportunity to raise the claims sub judice." (Obj. at 3). Thus, according to Petitioner, these claims "are offered as cause to excuse any procedural default argument." (Doc. 10 at 1). While, as noted above, some of petitioner's claims may not be properly before the Court, the Court has nonetheless found, as did Magistrate Judge Hart, that these claims do not warrant relief on their merits. See 28 U.S.C. § 2254(b)(2) (allowing rejection of procedurally barred claims on the merits). Accordingly, this objection will be rejected.

### VII. CONCLUSION

For the foregoing reasons, the Court will adopt the R & R and deny the Petition for Writ of Habeas Corpus.

An appropriate Order follows.